DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pwfirm.com
MICHAEL H. PEARSON (Bar No. 277857)
  mpearson@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

MELISSA S. WEINER
  mweiner@pwfirm.com
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

*Attorneys for Plaintiffs and the Proposed
Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ABDALLAH NASSER, JOHN BOHEN, and MARISSA SANCHEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BUMBLE BEE FOODS, LLC,<br><br>Defendant. | CASE NO. 2:23-cv-01558<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

989485.1

Plaintiffs Abdallah Nasser, John Bohen, and Marissa Sanchez ("Plaintiffs"), bring this Class Action against Defendant Bumble Bee Foods, LLC ("Defendant" or "Bumble Bee"), individually and on behalf of all others similarly situated, and allege upon personal knowledge as to their acts and experiences, and as to all other matters, upon information and belief, including investigations conducted by Plaintiffs' attorneys, the following:

## NATURE OF THE ACTION

1.      Bumble Bee charges a premium for its canned or pouched Wild Caught Pink Salmon and Sockeye Salmon, pouched Wild Caught Applewood Smoke Tuna, pouched Wild Selections Pink Salmon, and canned or pouched Wild Selections Solid White Albacore Tuna (hereinafter, collectively, the "Products") that uniformly promise to be "certified sustainable seafood" supported by a prominent certification from the Marine Stewardship Council ("MSC") in the form of a blue stamp (referred to hereinafter as the "Blue Tick") on the Product labels (hereinafter, the "Sustainability Promise").

2.      The prominent Sustainability Promise found on each and every Product label deceives and misleads reasonable consumers into believing the Products are sourced from sustainable fishing practices. Bumble Bee turns a blind eye to the unsustainable fishing practices used in sourcing its Products and boldly uses the Sustainability Promise with the Blue Tick as proof of sustainable fishing methods. However, as Bumble Bee knew or should have known, MSC hands out this certification to those who use industrial fishing methods that injure marine life as well as ocean habitats with destructive fishing. MSC also allows its members to obtain their certification with a paid membership, creating a potential conflict of interest.

3.      Despite the MSC certification, Bumble Bee sources its Products using fishing practices that indiscriminately harm ocean ecosystems. Bumble Bee knows that conscientious consumers go shopping in search of sustainable products, which, in turn, drives market share. Reasonable consumers believe the fisheries providing

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

these Products are maintaining healthy fish populations, protecting ecosystems, and upholding ethical labor practices. In fact, the MSC's standards themselves promise such protections for the oceans, marine life, and humans. However, MSC-certified fisheries do not provide these promised protections and, instead, engage in the following conduct, which indisputably defies its promise of sustainability: the suffocation and crushing of dolphins caught in fishing nets that are then hauled onto fishing boats while severely injured or dead; the torturously slow death of endangered sea turtles after getting caught on large hooks meant for tuna; the trapping of whales by fishing gear causing deep wounds and intense suffering; and the extortion of migrants working on fishing boats, who are forced to labor relentlessly for long hours, with little food and minimal sleep, under the threat of being beaten or thrown overboard.

4.    No reasonable consumer would believe the Products to be "sustainable" if they knew of these fishing practices utilized in sourcing the Products.

5.    In addition to violating the reasonable consumer's expectations with respect to sustainability, Bumble Bee knew or should have known that the Products are sourced in violation of its certifying body's—MSC's—*own standards*.

6.    Reasonable consumers are not required to look beyond the label representations to understand a company's label promises—here, the prominent Sustainability Promise. One need look no further than MSC's hollow promises of sustainability, which confirm a reasonable consumer's basic expectations of sustainability in purchasing allegedly "sustainable" products.[1]

7.    It, therefore, shocks the conscience to learn that Bumble Bee uses the hollow certification provided by MSC, an organization which Bumble Bee knows or

---

[1] https://www.msc.org/en-us/about-the-msc (last visited Feb. 16, 2023) (highlighting protection of healthy fish populations, careful management of ecosystems, and adaptations to changing environmental circumstances).

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  should know blatantly violates its own standards and puts the very ecosystem MSC

2  feigns to protect in serious danger.

3      8.      Bumble Bee's failure to ensure that the Sustainability Promise was, in

4  fact, truthful is a violation of the explicit promises that it made to consumers on each

5  and every Product label. Consumers expected that Bumble Bee would have the

6  proper, company-wide monitoring in place to confirm the explicit promise it made to

7  consumers regarding the sustainability of the fishing practices used to source the

8  Products. Instead, Bumble Bee failed to ensure that the fisheries only sourced using

9  sustainable means, making its promises meaningless.

10     9.      Sadly, despite profiting off of the false and misleading Sustainability

11 Promise, Bumble Bee does not promote the health and preservation of marine

12 ecosystems—a basic pillar of sustainability—nor does it protect human rights. Indeed,

13 Bumble Bee conceals the use of harmful fishing practices used for its Products, which

14 makes the Products more appealing to an ever-growing environmentally conscious

15 consumer base. By failing to disclose that its Products are, sadly, unsustainably

16 sourced through the use of fishing methods that harm ocean habitats and marine life,

17 Bumble Bee has induced reasonable consumers, like Plaintiffs and Class Members,

18 to become unwitting participants in the very environmental crisis they attempt to

19 avoid by purchasing and paying a premium for Bumble Bee's Products.

20     10.     Due to Bumble Bee's false and deceptive labeling, Plaintiffs and

21 reasonable consumers purchased Products based upon their reliance on Bumble Bee's

22 compliance with its Sustainability Promise. Had Plaintiffs and Class Members been

23 aware that Bumble Bee's fishing techniques used to source its Products were not

24 sustainable, Plaintiffs and Class Members would not have purchased the Products or

25 would not have paid more for the Products. Accordingly, Plaintiffs and Class

26 Members have been injured by Bumble Bee's deceptive business practices.

27

28

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1

## JURISDICTION AND VENUE

2    11.    This Court has subject matter jurisdiction over this action pursuant to the
3  Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class
4  member is of diverse citizenship from Bumble Bee; there are more than 100 Class
5  members nationwide; and the aggregate amount in controversy exceeds $5,000,000.
6  This court has personal jurisdiction over the parties because Bumble Bee conducts
7  substantial business in this State, has had systematic and continuous contacts with this
8  State, and has agents and representatives that can be found in this State.

9    12.    Pursuant to 28 U.S.C. §1391(b), venue is proper in this District because
10 a substantial part of the events or omissions giving rise to the claims occurred in this
11 District.

12

## THE PARTIES

13    13.    Plaintiff Abdallah Nasser resides in Woodbridge, Virginia and is a
14 citizen of Virginia. Throughout the relevant period, Plaintiff Abdallah Nasser
15 purchased the Products at issue in this lawsuit and was exposed to and reasonably
16 relied upon Bumble Bee's "sustainable" representation. Specifically, Plaintiff Nasser
17 purchased Bumble Bee Pink Salmon (cans and pouches) from local Woodbridge,
18 Virginia retailers such as Walmart in December 2022. Plaintiff Nasser specifically
19 remembers the "sustainable" labeling on the Products' packaging. In reasonable
20 reliance on the Sustainability Promise, Plaintiff Nasser paid an increased cost for the
21 Products, which were worth less than represented because the statements were not
22 true and were highly misleading. Bumble Bee's Sustainability Promise was part of
23 the basis of the bargain in that Plaintiff Nasser attributed value to Bumble Bee's
24 Sustainability Promise and Plaintiff Nasser would not have purchased the Products,
25 or would not have purchased them on the same terms, if he knew the Sustainability
26 Promise was untrue and/or misleading. Plaintiff Nasser paid a price premium for
27 empty promises of sustainability that Bumble Bee did not keep. Had Plaintiff Nasser

28

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  been aware that the "sustainable" representations made by Bumble Bee were untrue,
2  he would have paid less for the Products, or not purchased them at all.

3      14.    Plaintiff John Bohen resides in Corona, California and is a citizen of
4  California. Throughout the relevant period, Plaintiff John Bohen purchased the
5  Products at issue in this lawsuit and was exposed to and reasonably relied upon
6  Bumble Bee's "sustainable" representation. Specifically, Plaintiff Bohen purchased
7  Bumble Bee Wild Selection Solid White Albacore Tuna (cans and pouches) from
8  local Corona, California retailers such as Walmart weekly since approximately 2014
9  up until November 2022. Plaintiff Bohen specifically reviewed the "sustainable"
10 labeling on the Products' packaging prior to purchase. In reasonable reliance on the
11 Sustainability Promise, Plaintiff Bohen paid an increased cost for the Products, which
12 were worth less than represented because the statements were not true and were highly
13 misleading. Bumble Bee's Sustainability Promise was part of the basis of the bargain
14 in that Plaintiff Bohen attributed value to Bumble Bee's Sustainability Promise and
15 Plaintiff Bohen would not have purchased the Products, or would not have purchased
16 them on the same terms, if he knew the Sustainability Promise was untrue and/or
17 misleading. Plaintiff Bohen paid a price premium for empty promises of sustainability
18 that Bumble Bee did not keep. Had Plaintiff Bohen been aware that the "sustainable"
19 representations made by Bumble Bee were untrue, he would have paid less for the
20 Products, or not purchased them at all.

21     15.    Plaintiff Marissa Sanchez resides in Chicago, Illinois and is a citizen of
22 Illinois. Throughout the relevant period, Plaintiff Marissa Sanchez purchased the
23 Products at issue in this lawsuit and was exposed to and reasonably relied upon
24 Bumble Bee's "sustainable" representation. Specifically, Plaintiff Sanchez purchased
25 Bumble Bee Wild Selection Solid White Albacore Tuna (cans and pouches) from
26 local Chicago, Illinois retailers such as Walmart in November 2022. Plaintiff Sanchez
27 specifically remembers the "sustainable" labeling on the Products' packaging. In
28 reasonable reliance on the Sustainability Promise, Plaintiff Sanchez paid an increased

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  cost for the Products, which were worth less than represented because the statements

2  were not true and were highly misleading. Bumble Bee's Sustainability Promise was

3  part of the basis of the bargain in that Plaintiff Sanchez attributed value to Bumble

4  Bee's Sustainability Promise and Plaintiff Sanchez would not have purchased the

5  Products, or would not have purchased them on the same terms, if she knew the

6  Sustainability Promise was untrue and/or misleading. Plaintiff Sanchez paid a price

7  premium for empty promises of sustainability that Bumble Bee did not keep. Had

8  Plaintiff Sanchez been aware that the "sustainable" representations made by Bumble

9  Bee were untrue, she would have paid less for the Products, or not purchased them at

10  all.

11      16.    Defendant Bumble Bee Foods, LLC is incorporated in Delaware and has

12  its principal place of business in San Diego, California. Bumble Bee produces,

13  processes, markets, and distributes canned and pouch-packaged salmon and tuna

14  products. As of June 2020, it is owned by FCF Co. Ltd., a Taiwanese seafood

15  producer.

16                              **CHOICE OF LAW**

17      17.    California law governs the state law claims asserted herein by Plaintiffs

18  and Class Members.

19      18.    Upon information and belief, Bumble Bee's acts and omissions alleged

20  herein were orchestrated and implemented at Bumble Bee's principal place of

21  business in California.

22      19.    California has a substantial interest in protecting the rights and interests

23  of California and other U.S. residents against wrongdoing by a company conducting

24  business in California, which is greater than that of any other State.

25      20.    Application of California law with respect to Plaintiffs' and the Class

26  Members' claims is neither arbitrary nor fundamentally unfair because California has

27  significant contacts and significant aggregation of contacts that give California a

28  substantial interest in the claims of the Plaintiffs and the Class.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

989485.1

COMPLAINT

**SUBSTANTIVE ALLEGATIONS**

**I.     Bumble Bee's Line of "Sustainable" Seafood Products**

21.     Bumble Bee markets, distributes, and sells its Products at various brick-and-mortar retail and grocery stores, including Walmart, Target, Safeway, and City Market as well as various online retailers, including Amazon.

22.     All of Bumble Bee's Products uniformly tout the Sustainability Promise on the front of the product packaging where it cannot be missed by consumers. Examples of these representations on Bumble Bee's Products can be seen in the images below:

   

23.     Federal guidance and consumer research demonstrate that sustainability claims, like those proffered by Bumble Bee, suggest to reasonable consumers that the Products are sourced through sustainable methods and in accordance with fishing techniques that promote healthy ecosystems. MSC itself highlights maintenance of healthy fish populations and careful management of ecosystems as pillars of sustainable fishing practices.[2] As detailed herein, no reasonable consumer would consider fishing with purse seiners, gillnets, and longlines, or using forced labor to be "sustainable."

---

[2] What is the MSC?, https://www.msc.org/en-us/about-the-msc.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

24.     The Federal Trade Commission's ("FTC") Green Guides ("Green Guides") were codified to "help marketers avoid making environmental marketing claims that are unfair or deceptive" based on its "views on how reasonable consumers likely interpret [those] claims."[3] The Green Guides are strong indicators of a reasonable consumer's understanding of sustainability practices.

25.     The FTC determined that "[u]nqualified general environmental benefit claims … likely convey that the product … has specific and far-reaching environmental benefits and may convey that the item … has no negative environmental impact."[4] For that reason, the FTC has cautioned against the use of claims, such as "sustainable," because "it is highly unlikely that [companies] can substantiate all reasonable interpretations of these claims."[5] In fact, the FTC has warned that "[m]arketers still are responsible for substantiating consumers' reasonable understanding of these claims."[6]

26.     Research demonstrates that claims related to sustainability are perceived by many consumers to mean "produced according to higher animal welfare standards."[7] Consumers have ranked "no pollution to the environment" and "respect

---

[3] FTC Green Guides, 16 C.F.R. § 260.1(a), (d) (2012).

[4] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, Federal Trade Commission (Apr. 2, 2019), https://www.ftc.gov/news-events/news/press-releases/2019/04/ftc-sends-warning-letters-companies-regarding-diamond-ad-disclosures; *see also* FTC Green Guides, 16 C.F.R. § 260.4(b) (2012).

[5] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, *supra* n.4.

[6] FTC, The Green Guides, Statement of Basis and Purpose, pg. 258 (Oct. 1, 2012) https://bit.ly/2TQ7GL9.

[7] Katrin Zander *et al.*, *Consumers' Willingness to Pay for Sustainable Seafood Made in Europe*, 30 J. Int'l Food & Agribusiness Marketing 251 (Dec. 22, 2017).

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

to fish welfare" as two of the four most important elements of sustainable aquaculture.[8]

27.     Consumers associate the term "sustainable" with environment and atmosphere preservation (80%), animal welfare and protection (76%), environmental packaging (53%), and advocacy for human rights and ethical treatment of workers.[9]

28.     A study on consumer perception of the phrase "ecologically sustainable" found that a majority of consumers "expect eco-labelled seafood to be harvested in a way that reduced impact on the fish population or the marine environment."[10] And, out of 235 responses, only four percent "expressed skepticism about the term ['ecologically sustainable']" and felt that "it was primarily a marketing term without real meaning."[11]

## II.     Bumble Bee's False and Deceptive Advertising Suggests to Consumers that Its Products are Protective of Fish Stocks, Marine Life, and Human Laborers

29.     Bumble Bee, through the Sustainability Promise that appears on all its Products, has consistently conveyed to consumers that its sustainably sourced Products promote the protection of fish stocks, marine life, and laborers.

30.     Bumble Bee is well aware of consumers' concerns about—and preferences for—sustainable food products. The content of Bumble Bee's website demonstrates its understanding that its consumers consider sustainable food products to be important. On its website, Bumble Bee confirms its Sustainability Promise,

---

[8] *Id.*

[9] Krystle Morrison, *How Do Consumers Really Feel About Sustainability?*, Food Industry Executive (Jan. 25, 2022) https://foodindustryexecutive.com/2022/01/how-do-consumers-really-feel-about-sustainability/.

[10] Loren McClenachan *et al.*, *Fair Trade Fish: Consumer Support for Broader Seafood Sustainability*, 17 FISH & FISHERIES 825 (Sept. 2016).

[11] *Id.*

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

stating that the Products are from "sustainable, healthy fisheries" and "sustainably sourced."[12]

31.    In reality, Bumble Bee knew or should have known the Products are harvested using unsustainable fishing practices that harm fish populations and kill marine life, such as dolphins, whales, seals, seabirds, sea turtles, and sharks. Bumble Bee's practices also perpetuate forced labor practices.

**A.    Bumble Bee's Products are Harvested Using Commercial Fishing Practices that are Environmentally Destructive, Irresponsible, and Inhumane**

32.    In purchasing Bumble Bee's Products with the Sustainability Promise, reasonable consumers expect that Bumble Bee would maintain the proper, company-wide monitoring to follow the explicit promises it makes regarding the alleged sustainable fishing practices used to source the Products. Failure to police MSC's blatant unsustainable practices violates the explicit Sustainability Promises Bumble Bee makes to consumers.

33.    Bumble Bee had an obligation to consumers to ensure that its prominent Sustainability Promise followed a reasonable consumer's expectation of sustainable seafood. Certainly, Bumble Bee knew it could not uphold that promise because it admits to using large scale fishing methods, employed by MSC fisheries and listed here, that indisputably harm the oceans and marine life.

• Purse seines: These large nets encircle schools of fish and indiscriminately capture all marine life within the net severely injuring and killing seals, sharks, and endangered sea turtles.

---

[12] The Bumble Bee Seafood Company, *Sustainability and Social Impact* (2022), https://thebumblebeecompany.com/impact/#:~:text=We%20supply%20products%20from%20sustainable,moving%20towards%20certification%20by%202025.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

• Gillnets: These large mesh nets not only capture fish by the gills but also capture any marine life and seabirds that get caught in their webbing and cannot escape, often dying slowly.

• Longlines: These heavy-duty fishing lines that are miles long with thousands of harmful hooks catch target fish but also nontargeted species such as endangered sea turtles that slowly drown.

34. Bumble Bee uses purse seiners and gillnets to catch salmon, and purse seiners and longlines to catch tuna.[13] As described herein, no reasonable consumer would deem these fishing practices sustainable.

35. A purse seiner is a large net that hangs down 650 feet deep from a floating circular top line as wide as a mile in diameter. The net is used to encircle a school of fish. The bottom is drawn tight to prevent fish from escaping and the net is hauled on board or dragged alongside the vessel.

36. Gillnets are mesh nets that allow for salmon to pass their heads and gills through holes in the mesh. When the salmon attempt to back out, they become stuck. Gillnets can be several miles long and up to 100 feet deep.

37. Longline fishers roll out fishing lines up to 60 miles long. From these tremendously long lines hang thousands of large hooks for catching tuna.

38. Purse seining is a non-selective method of catching fish. Once a purse seiner is set, all marine life within the net is captured, including marine mammals and sea turtles.[14] These non-target species are called bycatch. Most marine life in the purse

---

[13] Bumble Bee, *Salmon Harvesting* (2022), https://www.bumblebee.com/seafood-school/salmon-101/salmon-harvesting/; Bumble Bee, *Solid White Albacore Tuna vs. Chunk Light Tuna: Not All Tuna is Created Equal* (2022), https://www.bumblebee.com/seafood-school/albacore-tuna-vs-chunk-light-tuna/.

[14] NOAA, Fishing Gear: Purse Seines, https://www.fisheries.noaa.gov/national/bycatch/fishing-gear-purse-seines.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

seiner is crushed by weight that is accumulated from towing the net and animals are stressed, injured, or killed.[15]

39.     Gillnets also capture bycatch, including juvenile fish, sharks, seabirds, sea turtles, and cetaceans (whales, dolphins, and porpoises).[16] The gillnets, hard to see and difficult for cetaceans to detect through echolocation,[17] are known to cause the highest amount of cetacean bycatch.[18] Gillnets are often lost at sea and rarely recovered, so they can continue to capture marine animals for many years.[19]

40.     All of Bumble Bee's albacore tuna is caught using primarily the longline fishing method.[20] Besides tuna, the hooks capture and mortally wound sea turtles, sharks, and juvenile tunas.[21] Longline bycatch that is caught and discarded faces a mortality rate of up to 50%.[22] Hundreds of thousands of endangered loggerhead turtles and critically endangered leatherback turtles drown annually on longlines.[23]

41.     Additionally, overfishing and bycatch have contributed to the depletion of species such as snow crabs and salmon causing economic and environmental harm. No reasonable consumer would deem this method of fishing sustainable because of the severe harm it causes to the sockeye and pink salmon populations due to

---

[15] *Id.*

[16] World Wildlife Fund (WWF), *Bycatch*, https://www.worldwildlife.org/threats/bycatch#:~:text=NON%2DSELECTIVE%20FISHING%20GEAR&text=Longlines%2C%20trawling%20and%20the%20use,along%20a%20single%20fishing%20line.

[17] *Id.*

[18] International Whaling Commission, *Bycatch*, https://iwc.int/bycatch.

[19] WWF, *Bycatch*, *supra* n.16.

[20] https://www.bumblebee.com/seafood-school/albacore-tuna-vs-chunk-light-tuna/

[21] WWF, *Bycatch*, *supra* n.16.

[22] *Controversy Over Voluntary Environmental Standards: A Socioeconomic Analysis of the Marine Stewardship Council.*

[23] WWF, *Bycatch*, *supra* n.16.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

overfishing. These West Coast salmon have all been under stress for years.[24] After offspring migrate to the ocean, they come back to spawn, but the number of returning fish are dwindling or uncertain.[25]

42.    From 2014 to 2019, U.S. Secretary of Commerce, Gina M. Raimondo, determined that overfishing of salmon, including sockeye and pink, amounted to a fishery disaster for tribal communities in Washington and California.[26] The Secretary allocated $17.4 million to address the disasters.[27]

43.    "Most of Bumble Bee's salmon products contain wild-caught salmon, coming from the pristine waters off the Alaskan coast."[28] These Alaskan salmon fishing fleets catch large portions of salmon that are bound for British Columbia and shut out local fishers.[29] In 2020, the Washington State Recreation and Conservation Office found that several Pacific Northwest salmon species, including sockeye, are on the brink of extinction.[30]

---

[24] Erin Blakemore, *U.S. declares disaster for tribal salmon fisheries on the West Coast*, The Washington Post, (Sept. 10, 2022) https://www.washingtonpost.com/science/2022/09/10/tribal-fisheries-disaster/.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] Bumble Bee, *Salmon 101* (2022), https://www.bumblebee.com/seafood-school/salmon-101/#:~:text=Most%20of%20Bumble%20Bee's%20salmon,model%20of%20effective%20fishery%20conservation.

[29] Stefan Labbe, *Alaskan fishers intercepting B.C. salmon at 'jarring' rate*, Ocean Conservancy (Jan. 11, 2022), https://www.vancouverisawesome.com/highlights/alaskan-fishers-intercepting-bc-salmon-at-jarring-rate-4943714.

[30] Washington State Recreation and Conservation Office, *2020 State of Salmon in Watersheds* (Dec. 2020).

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

44.    With regard to albacore tuna, the 17th regular session of the Scientific Committee for Western and Central Pacific Fisheries has found that adult numbers continue to decline and estimates for 2020 ranges were particularly alarming.[31]

45.    A major contributor to Bumble Bee's unsustainable and unethical practices is its inability to eliminate forced labor. Evidence of such abuse underscores Bumble Bee's morally corrupt and deceptive practices.

46.    In June 2020, Bumble Bee was acquired by FCF Co. Ltd. ("FCF"), a Taiwan-based seafood producer, which has been linked to illegal fishing and human rights abuses.

47.    Most of the tuna produced through FCF's supply chain comes from fishing methods prone to these issues, such as distant water fishing, and from regions recognized by U.S. government agencies as high risk for forced labor and other abuses.[32] Bumble Bee relies on FCF's supply chain and profits off of fisheries that have engaged in well-documented and widespread labor abuses.[33]

48.    Because these vessels spend long periods of time at sea without being monitored, the situation fosters conditions that permit forced labor abuses to occur. Indebted migrant workers are often victims of these harsh conditions and unable to escape because they are on the high seas.[34]

---

[31] Thomas Heaton, *Albacore Tuna Decline Is Worrying Some South Pacific Nations*, Civil Beat (Sept. 13, 2021), https://www.civilbeat.org/2021/09/albacore-tuna-are-spawning-less-and-thats-worrying-some-south-pacific-nations/.

[32] *2020 List of Goods Produced by Child Labor or Forced Labor*, U.S. Department of Labor (Sept. 2020), https://www.dol.gov/sites/dolgov/files/ILAB/child_labor_reports/tda2019/2020_TVPRA_List_Online_Final.pdf.

[33] *Seafood Stewardship Index: FCF Co., Ltd.*, World Benchmarking Alliance, https://www.worldbenchmarkingalliance.org/publication/seafood-stewardship-index/companies/fcf-co/.

[34] *Revealing the Supply Chain at Sea*, Global Fishing Watch (Apr. 2021), https://globalfishingwatch.org/wp-content/uploads/Revealing-the-Supply-Chain-at-Sea_FINAL_2021.pdf.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

49.     In 2022, using Bumble Bee's "Trace My Catch" website, Greenpeace traced 119 Taiwanese fishing boats that supply Bumble Bee and found that 10% (or 13) of them violated the Taiwan Fishery Agency regulations and were on its illegal, unreported, and unregulated ("IUU") list.[35] Their IUU activities included illegal storing of shark fins, misreporting catch, and setting nets near whales.[36]

50.     Bumble Bee has knowingly sourced tuna from Da Wang, a Taiwanese-owned fishing vessel that was confirmed to have indicators of forced labor by U.S. Customs and Border Protection.[37] On a 2019, 6-month tuna fishing trip that supplied Bumble Bee with tuna, a fisher was reportedly beaten and died at sea on Da Wang.[38] In April 2022, the Taiwanese authorities indicted the owner and captain of Da Wang on charges of human trafficking.[39]

51.     Greenpeace conducted interviews with migrant fishers who had been working from 2019 to 2021 on Taiwanese fishing vessels that supplied tuna to Bumble Bee. Fishers on six of those vessels experienced forced labor abuses that included withholding of wages, confiscation and retention of passports, food restrictions, and excessive overtime, at times only being allowed three hours of sleep in a day.[40]

52.     A reasonable consumer purchasing the Products with a Sustainability Promise would not expect the related fishing practices to be implicated in egregious forced labor violations as described herein.

---

[35] Yuton Lee, *How trustworthy are seafood brands…really?,* Greenpeace (Sept. 5, 2022) https://www.greenpeace.org/international/story/55510/how-trustworthy-seafood-brands-bumblebee-fcf/.

[36] Greenpeace, Fake My Catch: The Unreliable Traceability in our Tuna Cans (Sept. 2022).

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

53.     Furthermore, ghost gear—known as abandoned, lost and discarded fishing gear—is the deadliest form of marine plastic.[41] "Unfortunately, wherever fishing takes place, gear is being lost,"[42] and MSC fisheries (which Bumble Bee employs) have not promulgated standards to prevent ghost gear.[43]

**B.     Contrary to Bumble Bee's Sustainability Promise, the Labels on the Products Certified by the MSC are False, Deceptive, and Misleading**

1.     MSC's Race to Profit

54.     Around the globe, consumers can find products certified by the MSC. These products are stamped with the Blue Tick that states they are "certified sustainable seafood."

55.     The MSC is the world's largest (allegedly) sustainable seafood organization, and it markets itself as an industry leader with an aim to set sustainable fishing standards. The organization claims its mission is to use its ecolabel and its fishery certification program to recognize and reward sustainable fishing practices.

56.     However, experts are concerned that the rapid growth of the MSC and the inherent conflict of interest have influenced the MSC into compromising its objective.

57.     Jim Barnes, director of the Antarctic and Southern Ocean Coalition, worries the MSC is straying from its mission and needs an overhaul.[44]

---

[41] Emma Bryce, An invisible killer': how fishing gear became the deadliest marine plastic, The Guardian (Nov. 7, 2022); https://www.theguardian.com/environment/2022/nov/07/invisible-killer-ghost-fishing-gear-deadliest-marine-plastic.

[42] *Id.*

[43]     https://www.msc.org/standards-and-certification/developing-our-standards/the-fisheries-standard-review/projects/prevention-of-gear-loss-and-ghost-fishing.

[44] Daniel Zwerdling & Margot Williams, *Is Sustainable-Labeled Seafood Really Sustainable?* NPR (Feb 11, 2013), https://www.npr.org/2013/02/11/171376509/is-sustainable-labeled-seafood-really-sustainable?t=1617527311964.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

58.     Approximately 80% of the organization's income comes from licensing their logo on seafood products.[45] Fisheries that seek certification and use of the MSC's "ecolabel" pay $20,000 to $100,000 USD.[46]

59.     Chris Pincetich, a marine biologist with the Turtle Island Restoration Network, said, "The MSC has rushed to accept applications from hundreds of fisheries around the globe in order to grow their business and network. Many of those are actually viewed by scientists as unsustainable. They should really take a closer look before they even engage with those fisheries."[47]

60.     Notwithstanding the countless fisheries that employ practices that deplete fish populations, destroy habitats, and harm marine life, there have only been a handful that have ever been denied certification in over 20 years.[48]

61.     Professor Callum Roberts, a marine biologist in the Department of Environment and Geography, University of York, and Amy Hammond, Head of Research at Seahorse Environmental Communications, expressed the perception that "the bar has been dropped unacceptably low in order to satisfy ever-growing market demand by getting more (generally large industrial) fisheries into the program."[49]

---

[45] *SEASPIRACY* (Ali Tabrizi dir., 2021).

[46] David Jolly, *Krill Harvest Certification Upsets Conservationists*, The New York Times, August 8, 2022, www.nytimes.com/2010/06/23/science/earth/23krill.html.

[47] Richa Syal, *License to krill: the destructive demand for a 'better' fish oil*, The Guardian (Sept. 7, 2021), https://www.theguardian.com/environment/2021/sep/07/license-to-krill-the-destructive-demand-for-a-better-fish-oil.

[48] *SEASPIRACY* (Ali Tabrizi dir., 2021).

[49] Amy Hammond & Callum Roberts, *Why The Marine Stewardship Council Needs an Independent Review*, ETHICAL CONSUMER (July 31, 2019) https://www.ethicalconsumer.org/food-drink/why-marine-stewardship-council-needs-independent-review.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

62.    Additionally, the International Seafood Sustainability Foundation ("ISSF") helps fisheries meet the MSC's certification requirements.[50] Tellingly, the eight founding members of the ISSF, which included Bumble Bee, were all "tuna industry giants," who, at the time of the foundation's finding in 2009, controlled fifty percent of the global tuna market between them.[51] Since its founding, ISSF has consistently been funded by the corporations that it claims to oversee, receiving hundreds of thousands of dollars in donations from Bumble Bee and other tuna fisheries.[52]

2.    MSC's Fishery Standards and Chain of Custody Standards

63.    The MSC defines sustainable seafood as "seafood [that] comes from fisheries that catch fish in ways that ensure the long-term health of a stock or species and the wellbeing of the ocean."[53] Individual fishers or vessels cannot be MSC certified—only fishing operations.[54] According to the MSC's website, there are currently more than 400 wild capture fisheries certified to this standard.[55]

64.    The MSC's Fishery Standards require:

- "Fishing must be at a level that ensures it can continue indefinitely and the fish population can remain productive and healthy."

---

[50] Alex Hofford, *How the International Seafood Sustainability Foundation (ISSF) Blocks Environmental Action*, Greenpeace, https://www.greenpeace.org/usa/oceans/sustainable-seafood/how-international-seafood-sustainability-foundation-blocks-environmental-action/.

[51] *Id.*

[52] *Id.*

[53] Marine Stewardship Council, What does the blue MSC label mean? www.msc.org/what-we-are-doing/our-approach/what-does-the-blue-msc-label-mean.

[54] *Id.*

[55] *Id.*

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

- "Fishing activity must be managed carefully so that other species and habitats within the ecosystem remain healthy."

- "[F]isheries must comply with relevant laws and be able to adapt to changing environmental circumstances."

65.  The MSC's Chain of Custody Standards require:

- Companies must purchase MSC certified product from a certified supplier.

- Certified products are clearly identifiable.

- Certified products are separated from non-certified.

- Certified products are traceable and volumes are recorded.

- Companies have a good management system in place.

66.  To combat forced and child labor in the seafood industry, all MSC Chain of Custody certificate holders are required to undergo an independent labor audit unless they can demonstrate that they are at "lower risk" of practicing forced or child labor.

67.  The following types of fishing are ineligible and outside the scope of entering assessment by the organization:

- target amphibians, reptiles, birds and/or mammals;

- use destructive fishing practices (such as poison or explosives);

- have been successfully convicted of forced labor violations within the last two years;

- are conducted under controversial unilateral exemption to an international agreement;

- are purely aquaculture (although some forms of enhanced fishery are eligible for assessment);

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

- have been convicted of shark finning violations within the last two years.[56]

3.  MSC Violates Its Own Fishery and Chain of Custody Standards

68.  Bumble Bee knows or should know that the MSC violates its fishery standards because it certifies fisheries that do not consider long term health of fish populations and do not consider the health of other species.

69.  Gerry Leape, an oceans specialist at the Pew Environment Group, supported the MSC for more than a decade as a member of its advisory Stakeholder Council, but he and other critics say that the MSC system has been certifying fisheries despite evidence that the target fish are in trouble, or that the fishing industry is harming the environment.[57]

70.  Many of the MSC's tuna fisheries do not have strategies in place to ensure fish stocks are sustainable over time. Regional Fisheries Management Organizations ("RFMOs") are responsible for establishing and implementing harvest strategies, which help maintain fish stocks, and are required for MSC fishery certification.[58]

71.  However, there are serious gaps. The Atlantic RFMO, International Commission for the Conservation of Atlantic Tunas ("ICCAT"), do not have harvest control rules for many tuna stocks.[59] The RFMO, Western and Central Pacific Fisheries Commission ("WCPFC"), also lacks harvest controls. On the MSC's own website it admits that 28 of its certified tuna fisheries in the Western Central Pacific

---

[56] *Id.*

[57] Daniel Zwerdling and Margot Williams, *Is Sustainable-Labeled Seafood Really Sustainable?*, NPR (Feb. 11, 2013), https://www.npr.org/2013/02/11/171376509/is-sustainable-labeled-seafood-really-sustainable?t=1617527311964.

[58] ISSF, Advancing Sustainable Tuna Fisheries, http://www.advancingsustainabletuna.org/our-work/harvest-strategies.

[59] *Id.*

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Ocean ("WCPO") have not adopted harvest strategies.[60] The WCPO tuna makes up half of the global tuna catch and represents 85% of MSC certified tuna.

72.     The MSC certifies large scale fisheries—most of which use harmful fishing techniques, such as purse seiners, gillnets, longlines, and trawlers—that account for 93% of the MSC certified catch; the remaining 7% of catch comes from small fisheries.[61]

73.     Bycatch levels are ignored by the MSC because, according to the organization itself, the levels are arbitrarily considered "sustainable."[62] The fishing methods used by MSC-certified fisheries indiscriminately capture non-target species.

74.     The MSC purports to have observers on board that monitor bycatch. However, on MSC-certified purse seiners and longline vessels there is evidence of bycatch, shark finning, and observer bribery being ignored.[63] Such evidence includes images of shark finning and captures of a whale shark, giant rays, and other species of concern that occurred on MSC boats.[64] Fishers have left marine animals dying on the decks or butchered them in the nets while they were still alive.[65]

---

[60] Marine Stewardship Council, Ongoing certification of Western Central Pacific tuna hangs in the balance, https://www.msc.org/media-centre/press-releases/press-release/ongoing-certification-of-western-central-pacific-tuna-hangs-in-the-balance.

[61] Frederic Le Manach *et al.*, *Small is beautiful, but large is certified: A comparison between fisheries the Marine Stewardship Council (MSC) features in its promotional materials and MS+C-certified fisheries,* (May 4, 2020); Marine Stewardship Council, *Fishing Methods and Gear Types*, https://www.msc.org/what-we-are-doing/our-approach/fishing-methods-and-gear-types.

[62] *SEASPIRACY* (Ali Tabrizi dir., 2021).

[63] J Schwenzfeier *et al.*, *Slipping Through the Net, Reported but Ignored: Infringements in the MSC tuna fisheries of the Western and Central Pacific.*, Shark Guardian (May 2022).

[64] *Id.*

[65] *Id.*

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

75.    Abandoned, lost, or discarded fishing gear, also known as "ghost gear" is the deadliest form of plastic in the ocean impacting fish populations, whales, dolphins, sharks, and sea turtles.[66] However, the MSC does not require the fisheries it certifies to provide effective strategies for mitigating ghost gear.

76.    The MSC is also violating its own standards designed to ensure that MSC Chain of Custody certificate holders do not engage in forced labor. The Thai Seafood Working Group, and 12 other human rights and environmental organizations, stated that the MSC fails to require audits or due diligence for countries that are well-documented as using forced laborers in the fishing sector.

77.    The MSC knows, or should know, of the violations on the FCF fisheries described herein, yet the MSC still certified these fisheries.

4.    Expert Criticism of MSC Fishing Standards

78.    Researchers, academics, and scientists globally have criticized the MSC for disregarding its own standards and compromising its credibility.

79.    Richard Page, a Greenpeace oceans campaigner, said decisions to certify some fisheries "seriously undermine" the MSC's credibility. "I will go as far as to say consumers are being duped. They think they are buying fish that are sustainable and can eat them with a clean conscience."[67]

80.    Rory Crawford, the MSC's own advisory council and a member of Bird Life International, conducted a study of 23 fisheries in 2019 and found that only three were actively working to monitor and minimize bycatch. "Consumers cannot be fully

---

[66] Ingrid Giskes, *Ghost Gear Prevention in the Seafood Industry*, Ocean Conservancy (Feb. 2, 2021), https://oceanconservancy.org/blog/2021/02/02/ghost-gear-prevention-seafood-industry/.

[67] Richa Syal, *License to krill: the destructive demand for a 'better' fish oil*, The Guardian (Sept. 7, 2021), https://www.theguardian.com/environment/2021/sep/07/license-to-krill-the-destructive-demand-for-a-better-fish-oil.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1
2
confident that certified fish comes without impacts on non-target species, from sharks to seabirds to whales."[68]

3
4
5
6
7
8
81.    Gerry Leape, an ocean specialist at the Pew Environment Group, supported the MSC for more than a decade as a member of its advisory Stakeholder Council, but is now concerned, stating, "We would prefer they didn't use the word *sustainable*." He and other critics say that the MSC system has been certifying fisheries despite evidence that the fish stocks are in trouble or that the fishing is harming the environment.[69]

9
10
11
12
13
82.    Daniel Paulie, a fisheries professor at the University of British Columbia, helped create the MSC, but now feels it is doing business for the industry, not the environment.[70] He has called for a complete ban of open-ocean fishing because it is essential to rebuild globally depleted fish stocks and prevent the demise of the fishing industry.[71]

14
15
5.    The MSC's Certification Label is Present on the Packaging of Bumble Bee's Products

16
17
18
19
83.    Despite the clear violations of sustainable fishing practices detailed herein, Bumble Bee promotes its canned and pouched salmon and tuna by prominently placing a Sustainability Promise on its Products. With consumers willing to pay a price premium for sustainable seafood products, Bumble Bee receives great

20
21
22
[68] Karen Mc Veigh, *Blue ticked off: the controversy over the MSC fish 'ecolabel'*, The Guardian (July 26, 2021), https://www.theguardian.com/environment/2021/jul/26/blue-ticked-off-the-controversy-over-the-msc-fish-ecolabel.

23
24
[69] Daniel Zwerdling & Margot Williams, *Is Sustainable-Labeled Seafood Really Sustainable?* NPR (Feb 11, 2013), https://www.npr.org/2013/02/11/171376509/is-sustainable-labeled-seafood-really-sustainable?t=1617527311964.

25
[70] *Id.*

26
27
28
[71] Richard Schiffman, *A Global Ban on Fishing on the High Seas? The Time Is Now*, Yale Environment 360 (Sept. 27, 2018), https://e360.yale.edu/features/a-global-ban-on-fishing-on-the-high-seas-the-time-is-now#:~:text=the%20High%20Seas%3F-,The%20Time%20Is%20Now,of%20the%20fishing%20industry%20itself.

financial benefit when it sells Products touted as "certified sustainable seafood" and bearing the MSC label.

84.     No reasonable consumer would consider such Products as "certified sustainable seafood" if they knew that the seafood in question was obtained using the fishing practices detailed herein, or that the fishing practices employed to obtain such seafood were in violation of the certifier's own standards.

85.     Bumble Bee Products are obtained using methods that fail to contribute to the health of non-target species in marine ecosystems. The purse seiner, gillnet, and longline fishing techniques all indiscriminately catch and injure or kill excessive amounts of marine mammals, sea birds, and sea turtles.

86.     Bumble Bee's Products come from fisheries that are not harvesting fish in ways that provide long-term healthy fish stocks. Instead, these fisheries contribute to the overfishing of sockeye and pink salmon to such an extent that it has amounted to a fishery disaster for tribal communities. They also contribute to the steady decline of albacore tuna stocks.

87.     Bumble Bee does not have an adequate Chain of Custody process because Bumble Bee's parent company, FCF, does not sufficiently audit its supplier vessels, which have been recognized for violating human rights. Therefore, Bumble Bee's Products are also tainted with forced labor abuses.

III.     **Bumble Bee's Sustainability Promise is Material to Consumers**

88.     The FTC has specifically acknowledged that "sustainable" claims are material to consumers.[72]

89.     Moreover, in 2013, the FTC submitted a comment outlining factors that the MSC should consider to ensure that its "certified sustainable seafood" label complies with the FTC Act and the agency's Green Guides. The comment particularly

---

[72] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, *supra* n.4.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

emphasized that the MSC's standards be grounded in sound science and that the organization, or any other third-party certifier, should consider consumer protection when developing or reviewing a certification system. Quoting the FTC's comment specifically, the agency advised, "If a certifier permitted practices that reasonable consumers found inconsistent with their interpretation of the seal, the certifier should change the seal or change the certification process to comport with that understanding. Therefore, the MSC … should take into account how reasonable consumers will perceive the MSC seal at the retail level."[73]

90.     Researchers have found that consumers seek out and are willing to pay significantly more for products labeled as "ecologically sustainable."[74]

91.     This finding is consistent with research that has found that "consumers are willing to pay to improve animal welfare and reduce undesirable environmental effects" from fishing."[75]

## IV.  **Bumble Bee's Wrongful Conduct Impacts Consumer Purchasing Decisions**

92.     Bumble Bee's Sustainability Promise deceives and/or is likely to deceive the public. Reasonable consumers have been, and continue to be, deceived into believing that Bumble Bee's Products are harvested using sustainable fishing practices. Moreover, reasonable consumers have been, and continue to be, deceived into believing that Bumble Bee's Products are harvested in compliance with the MSC's Fishery Standards and other requirements.

---

[73] Donald S. Clark, *Marine Stewardship Council's Fishery Standards Review*, Federal Trade Commission, (May 2013).

[74] McClenachan *et al.*, *supra* n.10.

[75] Ingrid Olesen *et al.*, *Eliciting Consumers' Willingness to Pay for Organic and Welfare-Labelled Salmon in a Non-Hypothetical Choice Experiment*, 127 Livestock Sci. 218 (Feb. 2010), https://pubag.nal.usda.gov/catalog/775401.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

93.     Consumers are unable to discover the true nature of Bumble Bee's Products from the Product's packaging. Ordinary consumers do not have sufficient knowledge about the commercial fishing industry to know, or ascertain, that Bumble Bee's Products are sourced using unsustainable practices that effectively destroy marine ecosystems, deplete fish stocks, and engage forced labor. In that same breath, ordinary consumers do not have sufficient knowledge about Bumble Bee's practices to know, or ascertain, whether Bumble Bee is actually complying with the MSC's Fishery Standards and other requirements.

94.     Bumble Bee knew, or should have known, that their Products are not sourced sustainably. In making false, deceptive, and misleading representations, Bumble Bee intended to deceive reasonable consumers into buying and/or paying more for Products marketed with a Sustainability Promise.

95.     The material misrepresentations and omissions set forth in this Complaint by Bumble Bee were disseminated uniformly to Plaintiffs and all Class Members through product packaging and labeling, exposing Plaintiffs and all Class Members to Bumble Bee's false, deceptive, and misleading advertising and unfair, unlawful, and fraudulent business practices.

96.     When purchasing Bumble Bee's Products, Plaintiffs relied upon Bumble Bee's misrepresentations and omissions. Had Bumble Bee not made a Sustainability Promise that was false, deceptive, and misleading, reasonable consumers would not have been willing to pay a premium for the Products, would have chosen a competing product, or would not have purchased the Products at all.

97.     Plaintiffs were injured at the time of purchase as they would not have paid a premium price or purchased Bumble Bee's Products had Bumble Bee made truthful advertising statements and disclosed material information concerning the fishing practices involved with its Products, including its failure to comply with MSC standards and the supported use of its Blue Tick.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

98.    Bumble Bee's material misrepresentations and omissions set forth in this Complaint induced Plaintiffs into purchasing Bumble Bee's Products, resulting in remittance from Plaintiff to the benefit of Bumble Bee. Had Bumble Bee advertised its Products truthfully, Plaintiffs would not have paid Bumble Bee for its Products.

99.    Plaintiffs and Class Members have been, and will continue to be, deceived or misled by Bumble Bee's false and misleading misrepresentations and omissions concerning the fishing practices used to source its Products.

100.    Plaintiffs and Class Members are reasonable consumers who have been injured by purchasing Bumble Bee's Products. Because of Bumble Bee's material misrepresentations and omissions in its statements and advertisements concerning its Products, including on product packaging and labeling, Plaintiffs and Class Members were harmed at the time of purchase.

101.    Bumble Bee's misrepresentations and omissions were a material factor in influencing Plaintiffs' and Class Members' decision to purchase Bumble Bee's Products.

102.    Bumble Bee's conduct has injured Plaintiffs and Class Members because Bumble Bee's Products are not sustainably sourced, and do not even comply with the MSC's own standards. Rather, Bumble Bee's fishing practices are known to be destructive, and Bumble Bee failed to conspicuously disclose this reality to Plaintiffs and Class Members.

103.    Bumble Bee continues to engage in the unlawful acts and practices set forth in this Complaint.

104.    Unless enjoined, Bumble Bee's unlawful acts and practices described in this Complaint will continue.

## **CLASS ACTION ALLEGATIONS**

105.    As detailed at length in this Complaint, Bumble Bee orchestrated deceptive marketing, advertisement, and labeling practices. Bumble Bee's customers

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

106.   Plaintiffs Nasser, Bohen, and Sanchez bring this action as a class action pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23 on behalf of themselves and all others similarly situated as members. The Nationwide Class is defined as:

> **All persons who purchased the Products in the United States and its territories during the Class Period.**

107.   Plaintiff Bohen brings this action as a class action individually and all others similarly situated. The Multi-State Consumer Protection Class is defined as:

> **All persons who purchased in the State of California or any state with similar laws[76] any of the Products, within the applicable statute of limitations, until the date notice is disseminated.**

---

[76] While discovery may alter the following, Plaintiffs assert that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code §§ 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. §§ 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq.*); Delaware (Del. Code tit. 6, §§ 2511, *et seq.*); District of Columbia (D.C. Code §§ 28-3901, *et seq.*); Florida (Fla. Stat. §§ 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*); Idaho (Idaho Code §§ 48-601, *et seq.*); Illinois (815 ICLS §§ 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 §§ 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §§ 445.901, *et seq.*); Minnesota (Minn. Stat. §§ 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*); Montana (Mo. Code. §§ 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. §§ 59 1601, *et seq.*); Nevada (Nev. Rev. Stat. §§ 598.0915, *et seq,*); New Hampshire (N.H. Rev. Stat. §§ 358-A:1, *et seq.*); New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*); New Mexico (N.M. Stat. §§ 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, *et seq.*); North Dakota (N.D. Cent. Code §§ 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, §§ 751, *et seq.*); Oregon (Or. Rev. Stat. §§ 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws §§ 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code §§ 17.41, *et seq.*); Virginia (VA Code §§ 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq.*); Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*); West Virginia (W. Va. Code §§ 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. §§ 100.18, *et seq.*).

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

108. Plaintiff Bohen also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of California ("California Subclass") at any time during the Class Period. The California Subclass is defined as:

> **All persons who purchased the Products in the State of California during the Class Period.**

109. Plaintiff Sanchez also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of Illinois ("Illinois Subclass") at any time during the Class Period. The Illinois Subclass is defined as:

> **All persons who purchased the Products in the State of Illinois during the Class Period.**

110. Plaintiff Nasser also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of Virginia ("Virginia Subclass") at any time during the Class Period. The Virginia Subclass is defined as:

> **All persons who purchased the Products in the State of Virginia during the Class Period.**

111. The Nationwide Class, Multi-State Consumer Protection Class, and the California, Illinois, and Virginia Subclasses are referred to collectively throughout the Complaint as the Class.

112. Subject to additional information obtained through further investigation, fact collection and discovery, the foregoing definition of the Class may be expanded or narrowed by further amendment.

113. The Class is properly brought and should be maintained as a class action under Rule 23(a) and 23(b), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

114. **Numerosity**: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members that have been damaged by Bumble Bee's deceptive and misleading practices.

115. **Commonality**: The questions of law and fact common to the Class Members, which predominate over any questions that may affect individual Class Members include, but are not limited to:

    (a)    Whether Bumble Bee is responsible for the conduct alleged herein, which was uniformly directed at all consumers who purchased the Products;

    (b)    Whether Bumble Bee's misconduct set forth in this Complaint demonstrates that Bumble Bee has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

    (c)    Whether Bumble Bee made false and/or misleading statements to the Class and the public concerning the contents of its Products;

    (d)    Whether Bumble Bee's false and misleading statements concerning its Products were likely to deceive the public; and

    (e)    Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

116. **Typicality**: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Bumble Bee's

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

117. **Adequacy**: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their consumer fraud claims are common to all members of the Class and they have a strong interest in vindicating their rights; they have retained counsel that is competent and experienced in complex class action litigation; and they intend to vigorously prosecute this action.

118. **Predominance**: Pursuant to rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Bumble Bee's deceptive and misleading marketing and labeling practices.

119. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

(a) The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(b) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

(c) When Bumble Bee's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

(d) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

(e) Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

(f) This class action will assure uniformity of decisions among Class Members;

(g) The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

(h) Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

(i) It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Bumble Bee's uniform false marketing and advertising to purchase its Products as being good for the planet and eco-friendly.

120. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**CLAIMS FOR RELIEF**

**COUNT ONE**

**VIOLATION OF THE ILLINOIS**

**CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT**

**815 Ill. Comp. Stat. 505/1, *et seq*.**

**(By Plaintiff Sanchez on Behalf of the Illinois Subclass)**

118.    Plaintiff Sanchez incorporates the preceding paragraphs as if fully set forth herein.

119.    Plaintiff Sanchez brings this action individually and on behalf of the Illinois Subclass.

120.    In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/1, *et seq*., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

121.    Plaintiff Sanchez and the Illinois Subclass Members were injured by Bumble Bee's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff Sanchez and the Illinois Subclass Members. Because Plaintiff Sanchez and the Illinois Subclass Members relied on Bumble Bee's misrepresentations, concealments and omissions when purchasing Bumble Bee's Products, they were injured at the time of purchase.

122.    Bumble Bee does business in Illinois, sells and distributes their Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Products in Illinois and elsewhere in the United States.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

123.   The Products purchased by Plaintiff Sanchez and the Illinois Subclass Members were "consumer items" as that term is defined under the Illinois Consumer Fraud Act.

124.   Bumble Bee engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 505/2 when they misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Bumble Bee as set forth above concerning their Products, which has caused damage and injury to Plaintiff Sanchez and the Illinois Subclass Members. Plaintiff Sanchez and the Illinois Subclass Members were injured by Bumble Bee's unfair and deceptive acts at the time of purchasing Bumble Bee's Products.

125.   Bumble Bee represented, directly or indirectly, that their Products were "sustainable" when, in reality, they are not.

126.   Bumble Bee failed to disclose in their advertising statements the material fact that despite the uniform "sustainable" representations on the packaging of the Products, that they were, in fact, not "sustainable."

127.   Bumble Bee knew or should have known that their "sustainable" representations were false and misleading, and that by omitting and failing to disclose the truth in their advertising, they were omitting material facts that would alter any reasonable consumer's decision to purchase the Products.

128.   Bumble Bee's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

129.   Bumble Bee intended Plaintiff Sanchez and the Illinois Subclass Members to rely on their deceptive acts when purchasing Bumble Bee's Products.

130.   Bumble Bee's deceptive acts proximately caused actual injury and damage to Plaintiff Sanchez and the Illinois Subclass Members at the time of purchase.

35

COMPLAINT

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    131.   Plaintiff Sanchez and the Illinois Subclass Members would not have
2    purchased, or would have paid less for, Bumble Bee's Products but for Bumble Bee's
3    material misrepresentations as described in this Complaint.

**COUNT TWO**

**VIOLATION OF THE ILLINOIS**

**UNIFORM DECEPTIVE TRADE PRACTICES ACT**

**815 Ill. Comp. Stat. 510/2, *et seq*.**

**(By Plaintiff Sanchez on Behalf of the Illinois Subclass)**

9    132.   Plaintiff Sanchez incorporates the preceding paragraphs as if fully set
10   forth herein.

11    133.   Plaintiff Sanchez brings this action individually and on behalf of the
12   Illinois Subclass.

13    134.   The Illinois Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp.
14   Stat. 510/2, *et seq*., prohibits "[u]nfair methods of competition and unfair or deceptive
15   acts or practices, including but not limited to the use or employment of any deception,
16   fraud, false pretense, false promise, misrepresentation or the concealment,
17   suppression or omission of any material fact, with intent that others rely upon the
18   concealment, suppression or omission of such material fact."

19    135.   815 ILCS 510/2 provides in pertinent part that a "person engages in a
20   deceptive trade practice when, in the course of his or her business, vocation, or
21   occupation," the person does any of the following: "(5) represents that goods or
22   services have . . . uses, benefits or quantities that they do not have . . .; (7) represents
23   that goods or services are of a particular standard, quality, or grade or that goods are
24   a particular style or model, if they are of another; . . . [or] (12) engages in any other
25   conduct which similarly creates a likelihood of confusion or misunderstanding."

26    136.   Bumble Bee engaged in unfair and deceptive acts in violation of 815 Ill.
27   Comp. Stat. 510/2 when it misrepresented and deceptively concealed, suppressed
28   and/or omitted the material information known to Bumble Bee as set forth above

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

concerning its Products, which have caused damage and injury to Plaintiff Sanchez and the Illinois Subclass Members. Plaintiff Sanchez and the Illinois Subclass Members were injured by Bumble Bee's unfair and deceptive conduct at the time of purchasing Bumble Bee's Products.

137.   Bumble Bee represented, directly or indirectly, that its Products were "sustainable," when, in reality, they are not.

138.   Bumble Bee failed to disclose in its advertising statements the material fact that the Products are not "sustainable."

139.   Bumble Bee knew or should have known that its "sustainable" representations were false and misleading, and that by omitting and failing to disclose the truth in its advertising, they were omitting material facts that would alter any reasonable consumer's decision to purchase the Products.

140.   Bumble Bee's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

141.   Bumble Bee's deceptive acts proximately caused actual injury and damage to Plaintiff Sanchez and the Illinois Subclass Members at the time of purchase.

142.   Plaintiff Sanchez and the Illinois Subclass Members would not have purchased, or would have paid less for, Bumble Bee's Products but for Bumble Bee's material misrepresentations as described in this Complaint.

143.   Bumble Bee intended Plaintiff Sanchez and the Illinois Subclass Members to rely on its deceptive acts when purchasing the Products.

### COUNT THREE

### VIOLATION OF THE CALIFORNIA CONSUMERS

### LEGAL REMEDIES ACT, ("CLRA"), Civil Code §§ 1750, *et seq.*

### (By Plaintiff Bohen on Behalf of the California Subclass)

144.   Plaintiff Bohen incorporates the preceding paragraphs as if fully set forth herein.

145.   Plaintiff Bohen brings this action individually and on behalf of the California Subclass.

146.   The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq*.

147.   The CLRA applies to all claims of all California Subclass Members because the conduct which constitutes violations of the CLRA by Bumble Bee occurred within the State of California.

148.   Plaintiff Bohen and California Subclass Members are "consumers" as defined by Civil Code § 1761(d).

149.   Bumble Bee is a "person" as defined by Civil Code § 1761(c).

150.   The Products qualify as "goods" as defined by Civil Code § 1761(a).

151.   Plaintiff Bohen and California Subclass Members' purchases of the Products are "transactions" as defined by Civil Code § 1761(e).

152.   As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer as unlawful.

- "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Civil Code § 1770(a)(5);

- "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7);

- "Advertising goods or services with intent not to sell them as advertised." Civil Code § 1770(a)(9); and

- "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Civil Code § 1770(a)(16).

153.   Bumble Bee engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5), (a)(7), (a)(9) and (a)(16) when it

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

represented, through its advertising and other express representations, that the Products had benefits or characteristics (that they were "sustainable") that they did not actually have.

154.  As detailed in the body of this Complaint, Bumble Bee has repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding Products benefits or characteristics that they did not in fact have, and represented the Products to be of a quality that was not true. Indeed, Bumble Bee concealed this information from Plaintiff Bohen and California Subclass Members.

155.  Bumble Bee represented, directly or indirectly, that their Products were "sustainable" when, in reality, they are not.

156.  Bumble Bee failed to disclose in their advertising statements the material fact that despite the uniform "sustainable" representations on the packaging of the Products, that they were, in fact, not "sustainable."

157.  Bumble Bee knew or should have known that their "sustainable" representations were false and misleading, and that by omitting and failing to disclose the truth in their advertising, they were omitting material facts that would alter any reasonable consumer's decision to purchase the Products.

158.  Bumble Bee's deceptive acts occurred in a course of conduct involving trade and commerce in California and throughout the United States.

159.  Bumble Bee intended Plaintiff Bohen and California Subclass Members to rely on their deceptive acts when purchasing Bumble Bee's Products.

160.  Bumble Bee's deceptive acts proximately caused actual injury and damage to Plaintiff Bohen and California Subclass Members at the time of purchase.

161.  Plaintiff Bohen and California Subclass Members would not have purchased, or would have paid less for, Bumble Bee's Products but for Bumble Bee's material misrepresentations as described in this Complaint.

162.  Bumble Bee engaged in uniform marketing efforts to reach California Subclass Members, their agents, and/or third parties upon whom they relied, to

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

persuade them to purchase the Products. Bumble Bee's packaging, advertising, marketing, website and retailer product identification and specifications, contain numerous false and misleading statements regarding the "sustainability" of the Products.

163.   Despite these misrepresentations, Bumble Bee also omitted and concealed information and material facts from Plaintiff Bohen and California Subclass Members.

164.   In their purchase of Products, Plaintiff Bohen and California Subclass Members relied on Bumble Bee's representations and omissions of material facts.

165.   These business practices are misleading and/or likely to mislead consumers and should be enjoined.

166.   Pursuant to Cal. Civ. Code § 1782, Plaintiff Bohen notified Bumble Bee in writing by certified mail sent on March 2, 2023, of its violations of § 1770 described above and demanded that it correct the problems associated with the actions detailed above and give notice to all affected consumer of Bumble Bee's intent to do so. If Bumble Bee does not agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice, Plaintiffs will amend this Complaint to seek actual, punitive and statutory damages, as appropriate.

167.   A declaration establishing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(d) is attached hereto as Exhibit A.

168.   In accordance with Civil Code § 1780(a), Plaintiff Bohen and California Subclass Members seek injunctive and equitable relief for Bumble Bee's violations of the CLRA, including an injunction to enjoin Bumble Bee from continuing its deceptive advertising and sales practices.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

## COUNT FOUR

## VIOLATION OF THE CALIFORNIA

## UNFAIR COMPETITION LAW ("UCL")

### California Business and Professions Code §§ 17200, *et seq.*

### (By Plaintiff Bohen on Behalf of the California Subclass)

169.   Plaintiff Bohen incorporates the preceding paragraphs as if fully set forth herein.

170.   Plaintiff Bohen brings this action individually and on behalf of the California Subclass.

171.   Bumble Bee is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

172.   Plaintiff Bohen and California Subclass Members who purchased Bumble Bee's Products suffered an injury by virtue of buying products in which Bumble Bee misrepresented and/or omitted the Products' true quality, reliability, safety, and use. Had Plaintiff Bohen and California Subclass Members known that Bumble Bee materially misrepresented the Products and/or omitted material information regarding its Products, they would not have purchased the Products.

173.   Bumble Bee's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in this Complaint.

174.   There is no benefit to consumers or competition by allowing Bumble Bee to deceptively label, market, and advertise its Products.

175.   Plaintiff Bohen and California Subclass Members who purchased Bumble Bee's Products had no way of reasonably knowing that the Products were deceptively packaged, marketed, advertised, and labeled. Thus, Plaintiff Bohen and California Subclass Members could not have reasonably avoided the harm they suffered.

176.   Specifically, Bumble Bee marketed, labeled, and represented the Products as "sustainable," when in fact the Products are not.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

177.   The gravity of the harm suffered by Plaintiff Bohen and California Subclass Members who purchased Bumble Bee's Products outweighs any legitimate justification, motive or reason for packaging, marketing, advertising, and labeling the Products in a deceptive and misleading manner. Accordingly, Bumble Bee's actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiff Bohen and California Subclass Members.

178.   The above acts of Bumble Bee in disseminating said misleading and deceptive statements to consumers throughout the state of California, including to Plaintiff Bohen and California Subclass Members, were and are likely to deceive reasonable consumers by obfuscating the true nature of Bumble Bee's Products, and thus were violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

179.   As a result of Bumble Bee's above unlawful, unfair and fraudulent acts and practices, Plaintiff Bohen, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Bumble Bee from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Bumble Bee's wrongful conduct to the fullest extent permitted by law.

**COUNT FIVE**

**VIOLATION OF THE CALIFORNIA**

**FALSE ADVERTISING LAW ("FAL")**

**California Business and Professions Code §§ 17500, *et seq.***

**(By Plaintiff Bohen on Behalf of the California Subclass)**

180.   Plaintiff Bohen incorporates the preceding paragraphs as if fully set forth herein.

181.   Plaintiff Bohen bring this action individually and on behalf of the California Subclass.

182.   The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

183.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

184.   Specifically, Bumble Bee marketed, labeled, and represented the Products as "sustainable," when in fact they are not.

185.   Bumble Bee's failure to ensure that the Sustainability Promise was, in fact, truthful is a violation of the explicit promises that it made to consumers on each and every Product label. Consumers expected that Bumble Bee would have the proper, company-wide monitoring in place to confirm the explicit promise it made to consumers regarding the sustainability of the fishing practices used to source the Products. Instead, Bumble Bee failed to ensure that the fisheries only sourced using sustainable means, making its promises meaningless.

186.   Bumble Bee was either aware that Products were not caught using sustainable fishing practices consistent with the Blue Tick labeling or should have known that it lacked the information and/or knowledge required to make such a representation truthfully. Bumble Bee concealed and omitted and failed to disclose this information to Plaintiff Bohen and California Subclass Members.

187.   Bumble Bee's descriptions of the Products were false, misleading, and likely to deceive Plaintiffs and other reasonable consumers.

188.   Bumble Bee's conduct therefore constitutes deceptive or misleading advertising.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

189.   Plaintiffs have standing to pursue claims under the FAL as they reviewed and relied on Bumble Bee's packaging, advertising, representations, and marketing materials regarding the Products when selecting and purchasing the Products.

190.   In reliance on the statements made in Bumble Bee's advertising and marketing materials and Bumble Bee's omissions and concealment of material facts regarding the sustainability of the Products, Plaintiff Bohen and California Subclass Members purchased the Products.

191.   Had Bumble Bee disclosed the true nature of the Products (that they were not sustainable), Plaintiff Bohen and California Subclass Members would not have purchased Products or would have paid substantially less for them.

192.   As a direct and proximate result of Bumble Bee's actions, as set forth herein, Bumble Bee has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff Bohen and California Subclass Members who paid for the Products, which were not sustainable.

193.   Plaintiff Bohen and California Subclass Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Bumble Bee and by means of its deceptive or misleading representations, including monies already obtained from Plaintiff Bohen and California Subclass Members as provided for by the California Business and Professions Code § 17500.

## COUNT SIX

## VIOLATION OF THE VIRGINIA

## CONSUMER PROTECTION ACT OF 1977

### Va. Code Ann. §§ 59.1-196, *et seq.*

### (By Plaintiff Nasser on Behalf of the Virginia Subclass)

194.   Plaintiff Nasser incorporates the preceding paragraphs as if fully set forth herein.

195.   Plaintiff Nasser brings this action individually and on behalf of the Virginia Subclass.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

196. Plaintiff Nasser bring this claim on behalf of the Virginia Subclass against Bumble Bee for violation of the Virginia Consumer Protection Act of 1977, Va. Code Ann. §§ 59.1-196, *et seq*.

197. Bumble Bee is a "supplier," as defined by Virginia Code section 59.1-198.

198. Bumble Bee engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods," as defined by Virginia Code section 59.1-198. Bumble Bee advertised, offered, or sold goods used primarily for personal, family or household purposes.

199. Under the Virginia Consumer Protection Act of 1977:

> The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful:
> . . .
> 5. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;
> 6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model;
> . . .
> 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised.
> . . . [and]
> 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . .

Va. Code Ann. § 59.1-200(A)(5), (6), (8), (14).

200. Bumble Bee engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation, including, but not limited to, representing and labeling the Products as "sustainable," as described herein, in violation of each of the provisions set forth in the preceding paragraph.

201. Bumble Bee's representations and omissions were material because they were likely to deceive reasonable consumers.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

202.   Bumble Bee made the misrepresentations because consumers purchased the particular Products given the representations made about the sustainability of the Products. But Bumble Bee made these representations without any mechanism in place—or intention to develop such mechanism—to ensure that those practices were being followed as described to Plaintiff Nasser and the Virginia Subclass.

203.   As a direct and proximate result of Bumble Bee's deceptive acts and practices, the Plaintiff Nasser and the Virginia Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

204.   Bumble Bee's violations present a continuing risk of injury to Plaintiff Nasser and the Virginia Subclass Members, as well as to the general public.

205.   Plaintiff Nasser and the Virginia Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

206.   Therefore, Plaintiffs pray for relief as set forth below.

**COUNT SEVEN**

**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**

**(By Plaintiff Bohen on Behalf of the Multi-State Consumer Class)**

207.   Plaintiff Bohen incorporates the preceding paragraphs as if fully set forth herein.

208.   Plaintiff Bohen brings this action individually and on behalf of the Multi-State Consumer Class.

209.   Plaintiff Bohen and Multi-State Consumer Class Members have been injured as a result of Bumble Bee's violations of the state consumer protection statutes listed above in paragraph 107 and footnote 76, which also provide a basis for redress

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

to Plaintiff Bohen and Multi-State Consumer Class Members based on Bumble Bee's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

210. Bumble Bee's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Class.

211. Bumble Bee violated the Multi-State Consumer Class states' unfair and deceptive acts and practices laws by representing that its Products are "sustainable," when, in reality, they are not.

212. Bumble Bee's misrepresentations were material to Plaintiff Bohen's and Multi-State Consumer Class Members' decision to purchase the Products or pay a premium for the Products.

213. Bumble Bee made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

214. As a result of Bumble Bee's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff Bohen and Multi-State Consumer Class Members paid a premium for the Products.

215. As a result of Bumble Bee's violations, Bumble Bee has been unjustly enriched.

216. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff Bohen and Multi-State Consumer Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT EIGHT**

**UNJUST ENRICHMENT/QUASI-CONTRACT**

**(By Plaintiffs Nasser, Bohen, and Sanchez on Behalf of the Nationwide Class, or in the Alternative, on Behalf of the California, Virginia, and Illinois Subclasses, Respectively)**

217.   Plaintiffs Nasser, Bohen, and Sanchez incorporate the preceding paragraphs as if fully set forth herein.

218.   Plaintiffs Nasser, Bohen, and Sanchez bring this action individually and on behalf of the Nationwide Class, or in the alternative, on behalf of the California, Virginia, and Illinois Subclasses, respectively.

219.   Bumble Bee's unfair and unlawful contract includes, among other things, making false and misleading representations and omissions of material fact, as set forth in this Complaint. Bumble Bee's acts and business practices offend the established public policy of California, as there is no societal benefit from false advertising, only harm. While Plaintiffs Nasser, Bohen, and Sanchez and Nationwide Class Members were harmed at the time of purchase, Bumble Bee was unjustly enriched by their misrepresentations and omissions.

220.   Plaintiffs Nasser, Bohen, and Sanchez and Nationwide Class Members were harmed when purchasing Bumble Bee's Products as a result of Bumble Bee's material representations and omissions, as described in this Complaint. Each Plaintiff and Nationwide Class Member purchased Bumble Bee's Products. Plaintiffs Nasser, Bohen, and Sanchez and Nationwide Class Members have suffered injury in fact and lost money as a result of paying a premium price for the Products and by purchasing the Products at all, and as a result of Bumble Bee's unlawful, unfair, and fraudulent business practices.

221.   Bumble Bee's conduct allows Bumble Bee to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment of, Plaintiffs Nasser, Bohen, and Sanchez and Nationwide Class Members, and to

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Bumble Bee's benefit and enrichment. Bumble Bee's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

222. Plaintiffs Nasser, Bohen, and Sanchez and Nationwide Class Members confer significant financial benefits and pay substantial compensation to Bumble Bee for their Products, which are not as Bumble Bee represent them to be.

223. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Bumble Bee to retain the benefits conferred by Plaintiffs Bohen's, Nasser's, and Sanchez's and Nationwide Class Members' overpayments.

224. Plaintiffs Plaintiffs Nasser, Bohen, and Sanchez and Nationwide Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs Nasser, Bohen, and Sanchez and Nationwide Class Members may seek restitution.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves, and all other similarly situated, request that the Court enter judgment against Bumble Bee as follows:

(a) Declare this action to be a proper class action and certifying Plaintiffs as the representatives of the Class under Rule 23 of the Federal Rules of Civil Procedure;

(b) Award monetary damages, including treble damages and statutory damages;

(c) Award punitive damages;

(d) Provide for any and all injunctive relief the Court deems appropriate;

(e) Award Plaintiffs pre-judgment interest and post-judgment interest, to the extent permitted by law;

(f) Award Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   allowance of fees for Plaintiffs' attorneys and experts, and

2   reimbursement of Plaintiffs' expenses; and

3   (g)   Grant such other and further relief as the Court may deem

4   just and proper.

5   **JURY DEMAND**

6   Plaintiffs demand a trial by jury on all issues so triable.

7

8   DATED:  March 2, 2023        **PEARSON WARSHAW, LLP**

9

10

11   By:   _*/s/ Daniel L. Warshaw*_
            DANIEL L. WARSHAW

12

13   DANIEL L. WARSHAW (Bar No. 185365)
       dwarshaw@pwfirm.com

14   MICHAEL H. PEARSON (Bar No. 277857)
       mpearson@pwfirm.com

15   **PEARSON WARSHAW, LLP**

16   15165 Ventura Boulevard, Suite 400

17   Sherman Oaks, California 91403
     Telephone: (818) 788-8300

18   Facsimile:  (818) 788-8104

19

20   MELISSA S. WEINER*
       mweiner@pwfirm.com

21   **PEARSON WARSHAW, LLP**

22   328 Barry Avenue South, Suite 200
     Wayzata, MN 55391

23   Telephone: (612) 389-0600
     Facsimile:  (612) 389-0610

24

25

26

27

28

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

989485.1

50

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

ARI KRESCH*
 akresch@1800lawfirm.com
WENDY KERNER*
 wkerner@1800lawfirm.com
**KRESCH LEGAL SERVICES PR, PLLC**
1225 Avenida Ponce de Leon, Suite 605
San Juan, Puerto Rico 00907
Telephone: (800) 529-3476

GARY M. KLINGER*
 gklinger@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLP**
227 West Monroe Street, Suite 2100
Chicago, Illinois 60606

RACHEL L. SOFFIN*
 rsoffin@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN LLP**
800 South Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080

HARPER T. SEGUI*
 hsegui@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLP**
825 Lowcountry Boulevard, Suite 101
Mt. Pleasant, South Carolina 29464

* *Pro Hac Vice* Forthcoming

*Attorneys for Plaintiffs and the Proposed Class*